UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

09-60637-CIV-HUCK/O'SULLIVAN

SUNBEAM TELEVISION CORP., )
)
PLAINTIFF, )
)
VS. )
)
NIELSEN MEDIA RESEARCH, INC., ) THIS VOLUME:
) PAGES 1 - 17
DEFENDANT. )
______________________________)

(TRANSCRIPT BY DIGITAL RECORDING)

TRANSCRIPT OF INFORMAL DISCOVERY HAD BEFORE THE HONORABLE JOHN J. O'SULLIVAN, IN MIAMI, MIAMI-DADE COUNTY, FLORIDA, ON MAY 25, 2010, IN THE ABOVE-STYLED MATTER.

APPEARANCES:

FOR THE PLAINTIFF: CHRISTINE M. O'CONNOR, AND
BRIAN C. BARRY, ESQS.
CHOATE HALL & STEWART
TWO INTERNATIONAL PLACE
BOSTON, MA 02110 - 617 248-5000

ELAINE J. JAMES, ESQ.
EDWARDS ANGELL PALMER & DODGE, LLP
525 OKEECHOBEE BLVD., SUITE 1600
WEST PALM BEACH, FL 33401 - 561 833-7700

CARL SCHANZLEH
OFFICIAL COURT REPORTER
U. S. COURTHOUSE
299 E. BROWARD BLVD., 202B
FORT LAUDERDALE, FLORIDA 33301
954 769-5488

APPEARANCES:

FOR THE DEFENDANT: FARRAH R. BERSE, AND
KEVIN R. REICH, ESQS.
PAUL, WEISS, RIFKING, WHARTON & GARRISON, LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019 - 212 373-3000

NANCY A. COPPERTHWAITE, ESQ.
AKERMAN SENTERFITT
ONE SOUTHEAST 3RD AVENUE, 28TH FLOOR
MIAMI, FL 33131 - 305 374-5600

TABLE OF CONTENTS

| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|

INDEX TO EXHIBITS

| EXHIBITS | MARKED FOR IDENTIFICATION | | RECEIVED IN EVIDENCE | |
|---|---|---|---|---|
| DESCRIPTION | PAGE | LINE | PAGE | LINE |

(MIAMI, MIAMI-DADE COUNTY, FLORIDA; MAY 25, 2010, IN OPEN COURT.)

THE COURT: WE ARE HERE TODAY IN THE SUNBEAM TELEVISION CORP. VERSUS NIELSEN MEDIA RESEARCH, CASE NUMBER 09-CIV-60637.

CAN I HAVE APPEARANCES FOR THE PLAINTIFF FIRST?

MS. O'CONNOR: CHRISTINE O'CONNOR.

THE COURT: OKAY.

MS. O'CONNOR: AND BRIAN BARRY.

THE COURT: OKAY. GOOD.

AND WHO IS HERE FOR THE DEFENDANT?

MS. BERSE: FARRAH BERSE, KEVIN REICH, ANDRE GOLDSMITH AND NANCY COPPERTHWAITE.

THE COURT: OKAY. GOOD.

ALL RIGHT. THIS MATTER WAS SET DOWN BY THE PLAINTIFF, IS THAT CORRECT?

MS. O'CONNOR: THAT'S CORRECT, YOUR HONOR.

THE COURT: ALL RIGHT. WHAT'S THE ISSUE?

MS. O'CONNOR: WE HAVE TWO ISSUES TO DISCUSS TODAY.

THE FIRST IS (UNINTELLIGIBLE) IN OUR MEET AND CONFER AS WE TALKED ABOUT THE PRODUCTION HAS REFUSED TO PRODUCE SETTLEMENT AGREEMENTS IN LITIGATION CONCERNING ANTITRUST MATTERS OR DEFECTIVE PRODUCT MATTERS.

WE BELIEVE THAT THESE ARE HIGHLY RELEVANT TO OUR CASE. THIS IS AN ANTITRUST CASE. ONE OF THE SETTLEMENTS THAT WE ARE

AWARE OF IS A PRIOR POTENTIAL COMPETITOR. POST THE SETTLEMENT THE COMPETITOR STOPPED COMPETING AND INTELLECTUAL PROPERTY ASPECTS OF THAT COMPETITOR HAVE LEFT THE MARKETPLACE.

WE ARE ALSO AWARE OF ANOTHER LITIGATION INVOLVING UNIVISION, A TELEVISION STATION. IN THAT CASE UNIVISION RAISED ISSUES WITH RESPECT TO THE NIELSEN'S PRODUCT BEING DEFECTIVE BECAUSE IT DIDN'T SAMPLE SPANISH SPEAKING HISPANICS CORRECTLY.

WE'VE RAISED IN THIS CASE AN UNDER-REPRESENTED (UNINTELLIGIBLE) OF ENGLISH SPEAKING AND BILINGUAL HISPANICS. TO THE EXTENT THAT THE SETTLEMENT IN THAT CASE HAS SOMEHOW INFLUENCED THE SAMPLING OF HISPANICS IN THE MIAMI MARKET, WE BELIEVE THAT'S RELEVANT TO OUR CASE AS WELL. THE CASE HAS A PROTECTIVE ORDER

A VOICE: JOINING CONFERENCE.

MS. JAMES: ELAINE JAMES.

THE COURT: OKAY.

MS. O'CONNOR: THE CASE --

THE COURT: HOLD ON, MISS O'CONNOR.

MISS JAMES, ARE YOU ON THE PHONE NOW?

MS. JAMES: YES. I'M SORRY, JUDGE.

THE COURT: ALL RIGHT. CHRISTINE O'CONNOR IS ADDRESSING THE ISSUE.

GO AHEAD, MISS O'CONNOR.

MS. O'CONNOR: OKAY. JUDGE HUCK ORDERED A PROTECTIVE ORDER IN THIS CASE THAT WAS PROPOSED BY NIELSEN'S COUNSEL. IT

IS MERELY IDENTICAL TO THE ORDER THAT WAS PUT IN THE AARON MEDIA CASE, AND TO THE EXTENT THAT IT WAS THE SAME WE HAVE AGREED TO TREAT ALL THIRD-PARTY DOCUMENTS AT A HIGHLY CONFIDENTIAL, ATTORNEY EYES ONLY DESIGNATION IN THIS CASE.

SO WE BELIEVE THAT NOT ONLY ARE THE SETTLEMENT AGREEMENTS IN AT LEAST THOSE TWO CASES, AND PERHAPS OTHERS, ARE HIGHLY RELEVANT HERE, BUT THAT THEY ARE ALSO WELL PROTECTED IN THIS CASE AS ATTORNEY EYES ONLY DOCUMENTS.

THE COURT: OKAY. WHAT DOES NIELSEN SAY?

MS. BERSE: GOOD MORNING, YOUR HONOR. THIS IS FARRAH BERSE FOR NIELSEN.

THE SETTLEMENT AGREEMENTS THAT SUNBEAM ARE SEEKING ARE SETTLEMENT AGREEMENTS FROM UNRELATED LITIGATION WHICH HAVE NO RELEVANCE TO THE CLAIMS IN THIS CASE, NOR DO WE THINK THEY WOULD BE ADMISSIBLE.

SPECIFICALLY THE SETTLEMENT AGREEMENT WITH AARON MEDIA THAT MISS O'CONNOR MENTIONED IS AN AGREEMENT BETWEEN AARON MEDIA AND NIELSEN TO SETTLE LITIGATION THAT WAS PENDING IN FEDERAL COURT IN TAMPA SEVERAL YEARS AGO. IT WAS -- THE SETTLEMENT WAS THE RESULT OF A COURT ORDERED MEDIATION IN FRONT OF A MAGISTRATE JUDGE IN TAMPA. THERE IS NOTHING IN THE SETTLEMENT AGREEMENT THAT IMPOSED ANY RESTRICTIONS ON AARON MEDIA'S ABILITY TO COMPETE IF IT -- THEY DESIRED TO DO SO.

WE ALSO TAKE ISSUE WITH THE CHARACTERIZATION THAT AARON MEDIA CEASED COMPETING FOLLOWING THE SETTLEMENT. WE

DON'T BELIEVE THEY WERE COMPETING IN THE RELEVANT MARKET PRIOR TO THE SETTLEMENT IN THAT CASE AS WELL.

IN FACT, THERE IS NO ALLEGATION IN THIS CASE THAT AARON MEDIA WAS ACTUALLY PREPARED TO ENTER THE RELEVANT MARKET, THE MIAMI MARKET WHICH IS THE ISSUE IN THIS CASE. SO WE SEE NO RELEVANCE TO THE AARON MEDIA SETTLEMENT AGREEMENT.

AS TO THE UNIVISION SETTLEMENT AGREEMENT --

THE COURT: WELL, THAT -- GO AHEAD.

MS. BERSE: -- THAT WAS A CASE, YOUR HONOR, PENDING IN CALIFORNIA RELATING TO THE LOS ANGELES MARKET. IT WAS NOT A CASE BROUGHT BY A COMPETITOR, IT WAS A CASE BROUGHT BY A CUSTOMER OF NIELSEN. WE DO NOT SEE ANY RELEVANCE TO THE TERMS OF THAT SETTLEMENT AGREEMENT EITHER AND DON'T BELIEVE THAT SUNBEAM HAS MADE ANY SHOWING THAT THERE IS RELEVANCE SPECIFIC WITH THESE SIMILAR -- THERE MAY HAVE BEEN SOME SIMILAR ISSUES RAISED IN THE LITIGATION.

THE COURT: OKAY. WHAT DOES THE --

MS. O'CONNOR: YOUR HONOR, MAY I RESPOND?

THE COURT: YES, YOU MAY.

MS. O'CONNOR: WITH RESPECT TO THE RELEVANT MARKET ISSUE HERE. THESE ISSUES HAVE BEEN WELL BEDDED BY JUDGE HUCK ALREADY, AND HE HAS ACCEPTED OUR COMPLAINT ALLOWING US TO ALLEGE ANTITRUST ACTIVITIES THAT HAPPENED OUTSIDE THE MIAMI MARKET WHICH MAY HAVE PROHIBITED OR INHIBITED SOME COMPETITION WITHIN THE MIAMI MARKET. AMONG THESE PLEADINGS ARE PARAGRAPH

SPECIFICALLY TO AARON MEDIA, AND TO AARON MEDIA'S ATTEMPT TO BUILD A SERVICE COMPETITIVE TO NIELSEN'S.

THE COURT: EXCUSE ME.

MS. O'CONNOR: AARON MEDIA --

THE COURT: AARON MEDIA IS ACTUALLY ALLEGED WITHIN YOUR COMPLAINT, IS THAT WHAT YOU'RE SAYING?

MS. O'CONNOR: YES. YES. THERE ARE SPECIFIC ALLEGATIONS. PARAGRAPH 118, 121, 125(B) ARE SOME EXAMPLES OF THE ALLEGATIONS CONCERNING AARON MEDIA.

THE COURT: OKAY.

MS. O'CONNOR: AND WITH RESPECT TO THE CLAIM WITH UNIVISION. AS I SAID OUR CASE ALSO INVOLVES COMPLAINTS OF DEFECTIVE MEASUREMENT PRODUCT RELEASED BY NIELSEN.

WE ARE NOT CLAIMING THAT UNIVISION RAISED ANTITRUST ISSUES, BUT TO THE EXTENT NIELSEN RESOLUTION OF ITS CONFLICT WITH UNIVISION MAY HAVE HAD AN IMPACT ON NOW NIELSEN MEASURES SAMPLES OF HISPANICS, IT MAY BE LEANING MORE TOWARDS SPANISH SPEAKING HISPANICS THAN OTHER HISPANICS, WE BELIEVE THAT'S RELEVANT TO OUR CASE.

THE COURT: I DON'T UNDERSTAND HOW THAT IS RELEVANT TO YOUR CASE?

MS. O'CONNOR: WELL, IN OUR CASE WE -- WE ALLEGE THAT NIELSEN -- PART OF THE REASON WHY OUR AUDIENCE MEASUREMENTS ARE INCORRECT IS THAT NIELSEN IS MEASURING THE HISPANIC POPULATION OF MIAMI INCORRECTLY, AND IN DOING SO IT IS UNDERREPRESENTING

THOSE HISPANICS THAT PRIMARILY SPEAK ENGLISH OR ARE BILINGUAL.

THESE AUDIENCES WE BELIEVE ARE VERY LARGE AUDIENCES TO OUR TELEVISION STATION IN MIAMI, AND THAT THE DROP THAT WE EXPERIENCED IN MIAMI HAS A LOT TO DO WITH THE FACT THAT THEY ARE NOT PROPERLY SAMPLING THESE PARTS OF THE MIAMI POPULATION.

THE COURT: AND WHY DO YOU THINK THAT SETTLEMENT AGREEMENT IN REGARDS TO UNIVISION IN LOS ANGELES WOULD HAVE ANY RELEVANCY?

MS. O'CONNOR: WELL, THE SETTLEMENT AGREEMENT WITH UNIVISION WOULD HAVE BEEN AN AGREEMENT THAT AFFECTED UNIVISION'S TELEVISED MARKET THROUGHOUT THE COUNTRY, NOT JUST LOS ANGELES. AND IF THEY MADE AN AGREEMENT WITH UNIVISION TO PREFER SPANISH SPEAKING HISPANICS IN THEIR SAMPLE THAT WOULD BE AFFECTING US IN MIAMI.

THIS AGREEMENT MAY -- PERHAPS IT OCCURRED IN SETTLEMENT, AND WE BELIEVE THAT IF THAT'S TRUE THAT'S RELEVANT TO OUR CASE. BUT WITHOUT HAVING ACCESS TO THE SETTLEMENT AGREEMENTS WE DON'T KNOW AND BECAUSE WE PROVIDED THE PROTECTIONS -- THE PROTECTIVE ORDER WE DON'T REALLY THINK THIS IS AN ISSUE --

THE COURT: OKAY.

MS. O'CONNOR: -- THAT THEY CAN'T PROVIDE IT TO US SO THAT WE HAVE SOME UNDERSTANDING OF WHAT THE AGREEMENT IS.

THE COURT: OKAY. ALL RIGHT. I AM GOING TO ORDER THAT THE SETTLEMENT AGREEMENTS IN THE AARON MATTER AS WELL AS

THE UNIVISION MATTER BE PROVIDED TO THE PLAINTIFF IN THIS MATTER.

I FIND THAT THE AARON LITIGATION IS RELEVANT IN THAT THERE ARE ALLEGATIONS THAT RELATE TO AARON IN THE SUBJECT COMPLAINT, AS WELL AS THE SUBJECT MATTER IN THE UNIVISION LAWSUIT IS RELEVANT TO THE UNDERREPRESENTATION OF SPANISH SPEAKING -- OR HISPANICS IN SOME FASHION AND ARE RELEVANT TO THE LAWSUIT IN THIS MATTER. SO THEY ARE TO BE PROVIDED SUBJECT TO THE PROTECTIVE ORDER THAT HAS HAD BEEN PREVIOUSLY ENTERED IN THE CASE.

MS. BERSE: YOUR HONOR?

THE COURT: YES. GO AHEAD.

MS. BERSE: THIS IS FARRAH BERSE FOR NIELSEN.

YOU KNOW, ONE AREA OF PREJUDICE THAT WE HAVE NOT HAD A CHANCE TO SPEAK ABOUT YET IS OBVIOUSLY FROM -- IT COMES FROM SUNBEAM KNOWING THE MONETARY AMOUNT OF THE SETTLEMENT, AND WE DO NOT SEE ANY RELEVANCE TO THAT TERM BEING DISCLOSED. IT HAS NOTHING TO DO WITH THE SUBJECT MATTER OF WHETHER AARON MEDIA -- THERE WERE LIMITATIONS ON THEIR ABILITY TO COMPETE OR OTHER NONMONETARY TERMS IMPOSED IN THE UNIVISION SETTLEMENT. AND, SO WE WOULD REQUEST THAT WE BE PERMITTED TO REDACT THE MONETARY AMOUNT FROM THE SETTLEMENT AGREEMENT.

THE COURT: OKAY. ANY OBJECTION?

MS. O'CONNOR: YOUR HONOR, MAY I SPEAK TO THAT?

THE COURT: YES.

MS. O'CONNOR: I DON'T THINK THAT WE HAVE ANY ISSUE WITH THAT WITH RESPECT TO ANY SETTLEMENT WITH UNIVISION. IN AN ANTITRUST MONITOR, IF A COMPETITOR IS BOUGHT OUT OF THE MARKET THAT IN ITSELF COULD BE ANTITRUST ACTIVITY. SO THE AMOUNT THAT WAS PAID TO (UNINTELLIGIBLE) IN EXCESS OF THE WORTH OF AARON MEDIA WOULD BE RELEVANT TO THIS CASE.

SO I -- I HAVE NO PROBLEM WITH REDACTING ANY FINANCIAL SETTLEMENT WITH UNIVISION BUT I WOULD BE CONCERNED ABOUT THEIR ABILITY TO REDACT FINANCIAL SETTLEMENTS WITH AARON MEDIA, A COMPETITOR IN AN ANTITRUST MATTER.

THE COURT: ALL RIGHT. WHAT DO YOU SAY ABOUT THAT, MISS BERSE?

MS. BERSE: WITH REGARD TO AARON MEDIA. AGAIN, THE SETTLEMENT WAS THE RESULT OF A LENGTHY NEGOTIATION AND SETTLEMENT CONFERENCE THAT TOOK PLACE IN FRONT OF THE MAGISTRATE IN TAMPA.

I THINK -- YOU KNOW, WE REPRESENT TO THE COURT THAT THERE ARE NO TERMS OF THE AGREEMENT ITSELF THAT HAVE ANYTHING TO DO WITH NIELSEN -- AARON MEDIA'S ABILITY TO COMPETE MOVING FORWARD, AND THAT THE MONETARY AMOUNT WAS DEEMED TO BE A REASONABLE SETTLEMENT TO ALL PARTIES.

I THINK THERE IS GREAT PREJUDICE THAT COMES FROM DISCLOSING THE AMOUNT THAT NIELSEN WAS WILLING TO PAY TO SETTLE A SIMILAR ANTITRUST LITIGATION TO OPPOSING COUNSEL IN A CURRENTLY PENDING CASE.

THE COURT: OKAY. IN REGARDS TO THE AMOUNT I AM GOING TO ALLOW IT TO BE REDACTED IN BOTH CASES. AFTER LOOKING AT THE AARON MEDIA SETTLEMENT IF THE PLAINTIFF THINKS THAT IT IS STILL RELEVANT YOU CAN DISCUSS IT WITH THE DEFENDANT, HOPEFULLY WORK IT OUT. IF YOU CAN'T YOU CAN COME BACK TO ME ON IT.

MS. O'CONNOR: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. IS THERE ANOTHER ISSUE OR IS THAT IT?

MS. O'CONNOR: YES. WE BOTH HAVE RAISED AN ISSUE WITH RESPECT TO THE APPROACH NIELSEN HAS TAKEN FOR SEARCHING FOR RESPONSIVE MATERIAL.

THE COURT: YES.

MS. O'CONNOR: WE HAVE HAD MANY SETTLEMENT -- I'M SORRY. WE HAVE HAD MANY DISCOVERY CONFERENCES AND HAVE BEEN ABLE TO COME UP WITH COMPROMISES WITH EACH AND EVERY OF THE REQUESTS, AT LEAST WE'RE NEAR COMPROMISE ON THOSE THAT ARE STILL OPEN.

THE PROBLEM THAT WE HAVE IS THAT NIELSEN APPEARS TO BE SEARCHING ONLY HIGH LEVEL EXECUTIVES WITHIN NIELSEN AND RELYING ON THOSE EXECUTIVES TO SAY WHETHER THEY HAVE TO GO ONE STEP DOWN. WE BELIEVE THAT THIS IS AN INAPPROPRIATE WAY TO BE SEARCHING FOR MATERIALS, PARTICULARLY WHEN NIELSEN IS ORGANIZED IN A VERTICAL FASHION BY PROJECT AND DEPARTMENT.

SO WE WERE ASKING IF THE COURT WOULD -- WITH RESPECT TO REQUEST DEALING WITH NIELSEN'S METHODOLOGY, DECISION MAKING,

DEVELOPMENT AND DEPLOYMENT TO REQUIRE NIELSEN TO AT LEAST SEARCH THE DOCUMENTS IN A VERTICAL FASHION AND NOT JUST AT THE UPPER LEVEL MANAGEMENT.

THE COURT: OKAY. WHAT DOES NIELSEN SAY?

MS. BERSE: FIRST, I DON'T BELIEVE THAT THE ISSUE IS ACTUALLY RIPE FOR DECISION AS WE HAVE DISCUSSED WITH SUNBEAM COUNSEL. WE ARE STILL IN THE PROCESS OF COLLECTING DOCUMENTS, AND AS WE ARE GOING THROUGH THE -- WALKING THROUGH THE PROCESS WE ARE DETERMINING ADDITIONAL CUSTODIANS WHO HAVE RESPONSIVE MATERIAL AND ARE COLLECTING AND PRODUCING IT AS APPROPRIATE.

NIELSEN'S CUSTODIANS ARE NOT SENIOR EXECUTIVES ONLY, AS I BELIEVE MANY OF THEM ARE. BUT TO THE EXTENT THAT NIELSEN IS -- YOU KNOW, DISCOVERS THROUGH THE PROCESS THAT THERE ARE ADDITIONAL PEOPLE WHO REPORT TO THESE EXECUTIVES TO HAVE -- WHO ARE -- WHO CONTROL THE RESPONSIVE DOCUMENTS WE ARE GOING TO THOSE INDIVIDUALS. WE HAVE LET SUNBEAM COUNSEL KNOW THAT WE ARE CONTINUALLY UPDATING OUR LIST OF CUSTODIANS.

IN ADDITION TO THE EXTENT THAT SUNBEAM IS SEEKING MATERIALS THAT EXPLAIN NIELSEN'S METHODOLOGY OR THE REASONS BEHIND DECISIONS THAT WERE MADE, IT IS VERY OFTEN THE SENIOR EXECUTIVES WHO ARE IN POSSESSION OF THE RELEVANT MATERIALS. THEY ARE THE ONES WHO HAVE RESPONSIBILITY FOR OVERSEEING THE DECISIONS THAT ARE MADE AND MAKING THOSE DECISIONS AND ARE OFTEN THE ONES IN CONTROL OF THE RELEVANT AND RESPONSIVE DOCUMENTS.

THE COURT: AND WHAT --

MS. O'CONNOR: YOUR HONOR, WE CERTAINLY AREN'T SAYING THAT THEY SHOULD NOT BE LOOKING AT THESE SENIOR EXECUTIVES THAT MAKE ULTIMATE DECISIONS. WHAT WE ARE SAYING IS THAT TO THE EXTENT THAT AS A PROBLEM IS ADDRESSED AN RESOLVED AND WORKED UP THE CHAIN OF COMMAND DECISION ARE BEING MADE ALONG THE WAY, AND THOSE DECISIONS ARE ESSENTIALLY SANITIZED AND PRESENTED TO A MANAGEMENT GROUP TO BE GIVEN FURTHER CONSIDERATION.

WE THINK THAT THIS PARTY SHOULD BE, AS SUNBEAM DID, RESPONSIBLE FOR LOOKING FOR RESPONSIVE DOCUMENTS FROM ALL PEOPLE THAT MIGHT BEEN HAVING THEM. WE IN OUR DOCUMENT REQUEST ONLY LOOKED FOR DOCUMENTS THAT ARE SAMPLING CONCERNING. WE HAVE ELIMINATED THE POSSIBILITY THAT THEY HAVE TO LOOK AT EVERY CC THAT MIGHT HAVE HAD, YOU KNOW, ONE DOCUMENT OR A FEW DOCUMENTS RELATED TO AN ISSUE. BUT BY DOING SO WE CERTAINLY AREN'T SAYING THAT THEY SHOULD NOT LOOK AT PEOPLE THAT MAY HAVE INITIATED A CHAIN OF EVENTS THAT CULMINATE WITH A SENIOR PERSON IN THE ORGANIZATION.

I HAVE NEVER IN MY EXPERIENCE LOOKED AT A DOCUMENT COLLECTION PROCESS AS SKIMMING OFF THE TOP AND AVOIDING WHAT'S BEEN DONE BELOW THE SURFACE.

THE COURT: OKAY. I YOU UNDERSTAND FROM NIELSEN WHY YOU WOULDN'T BE LOOKING AT THE LOWER LEVEL -- IN OTHER WORDS, FROM WHERE THE PROBLEM INITIATED RATHER THAN JUST FROM WHERE IT WAS RESOLVED.

MS. BERSE: AND, YOUR HONOR, I THINK THIS IS ONE OF OUR ISSUES WITH (UNINTELLIGIBLE) AT THIS TIME IS THAT IT IS NOT SPECIFICALLY TIED TO A PARTICULAR REQUEST. AND, SO IT IS DIFFICULT TO ADDRESS.

BUT TO THE EXTENT IF SUNBEAM IS REQUESTING DOCUMENTS THAT CONCERN, YOU KNOW, THE REASONS WHY A PARTICULAR DECISION WAS MADE, WHICH IS THE TYPE OF REQUEST THAT SUNBEAM HAS POSED IN A NUMBER OF INSTANCES, WE ARE GOING TO THE INDIVIDUALS WHO ARE RESPONSIBLE FOR MAKING THAT DECISION. WE ARE ASKING THEM TO PROVIDE US WITH THE DOCUMENTS THAT SUPPORT AND UNDERLIE THAT DECISION THAT THEY RELIED UPON IN MAKING THAT DECISION.

TO THE EXTENT THAT THEY TELL US THAT, YOU KNOW, THE PERSON MAKING THE DECISION IS NOT THE INDIVIDUAL WHO HAS THE UNDERLYING DOCUMENT, OF COURSE, WE ARE GOING LOWER DOWN. BUT, YOU KNOW, NIELSEN IS A COMPANY WITH OVER 30,000 EMPLOYEES AND WE CAN'T CONTINUALLY GO, YOU KNOW, ONE LEVEL DOWN FROM EACH INDIVIDUAL (UNINTELLIGIBLE) AND I THINK, YOU KNOW, WE HAVE COME TO AN AGREEMENT AND AN UNDERSTANDING WITH SUNBEAM THAT THAT'S NOT WHAT IS EXPECTED.

AND, SO, YOU KNOW -- IN THE ABSTRACT, WHICH IS ALL THIS IS RIGHT NOW, YOU KNOW, NIELSEN MAKES THE REPRESENTATION TO SUNBEAM, TO THE COURT THAT WE ARE, YOU KNOW -- WE UNDERSTAND WHAT OUR OBLIGATIONS ARE. THE PARTIES HAVE WORKED VERY HARD TO NARROW THE REQUEST AND NOW WE ARE GOING TO PEOPLE THAT WE BELIEVE HAVE THE RESPONSIVE DOCUMENT TO THESE NARROW REQUESTS.

THE COURT: OKAY. ALL RIGHT. I HAVE HEARD ENOUGH.

ALL RIGHT. AS FAR AS THIS SECOND ISSUE REGARDING THE SEARCH FOR DOCUMENTS, I THINK IT IS PREMATURE.

I WILL TELL NIELSEN THAT IF THERE IS EVIDENCE THAT PEOPLE BELOW THE MANAGEMENT LEVEL ARE INVOLVED IN THE INITIATING A COMPLAINT OR AN ISSUE THAT IS RESOLVED AT THE HIGHER MANAGEMENT LEVEL THAT ALL THOSE DOCUMENTS SHOULD BE PRODUCED. BUT I AM NOT PREPARED TO ADDRESS THEM WITHOUT IT INVOLVING A PARTICULAR REQUEST FOR PRODUCTION AND HEAR WHY IN THAT PARTICULAR INSTANCE A CERTAIN KIND OF SEARCH SHOULD BE MADE.

YOU KNOW, YOU ARE REQUIRED PURSUANT TO RULE 26 AS WELL TO GET TOGETHER AND ATTEMPT TO COME SOME KIND OF -- I ASSUME MOST OF THESE DOCUMENTS, OR A LOT OF THESE DOCUMENTS ARE ELECTRONIC DOCUMENTS. YOU'RE SUPPOSED TO COME TO SOME KIND OF AGREEMENT IN REGARDS TO HOW THOSE SEARCHES ARE TO BE DONE AND TO TRY TO DO IT EXPEDITIOUSLY, AS WELL AS ECONOMICALLY. SO I'M GOING TO REQUIRE THAT YOU HAVE A CONFERENCE IN REGARD TO THAT AND TRY TO WORK IT OUT.

IF YOU ARE UNABLE TO THEN --

MS. O'CONNOR: YOUR HONOR --

THE COURT: IF YOU ARE UNABLE TO THEN YOU CAN COME BACK TO ME.

YES?

MS. O'CONNOR: YOUR HONOR, I JUST WANT TO NOTE FOR THE

COURT THAT AT THIS POINT IN TIME WE HAVE HAD THOSE CONFERENCES AND WE HAVE AGREED UPON THE SEARCH TERM THAT NIELSEN SHOULD USE. WE HAVE (UNINTELLIGIBLE) NARROW SEARCH TERMS TO TRY TO KEEP IT AS MINIMAL AS POSSIBLE.

THEY HAVE ONLY DISCLOSED TO US 45 CUSTODIANS OUT OF THE 30,000 THAT THEY ARE SEARCHING, AND THIS CASE HAS A VERY, VERY SHORT DISCOVERY WINDOW. OUR EXPERT REPORT, WHICH WILL BE BASED PRIMARILY ON INFORMATION HELD BY NIELSEN, ARE DUE ON AUGUST 2ND. SO WE HAVE TWO MONTHS OF DISCOVERY LEFT, AND I'M VERY CONCERNED ABOUT THE FACT THAT WE HAVE AFTER, YOU KNOW, NINE CONFERENCES ARE AT THIS POINT.

SO I JUST WANT TO BE SURE THAT THAT IS UNDERSTOOD, AND WE WILL ATTEMPT AGAIN TO GET A CLEAR UNDERSTANDING OF WHAT NIELSEN IS PRODUCING. BUT, YOU KNOW, A VERY SINCERE EFFORT HAS BEEN MADE ON THAT BEHALF.

THE COURT: WELL, CONTINUE YOUR EFFORTS. IF YOU ARE UNABLE TO RESOLVE IT THEN YOU CAN COME BACK TO ME. OKAY?

MS. O'CONNOR: THANK YOU, YOUR HONOR.

MS. BERSE: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. THANKS A LOT.

\- - -

C E R T I F I C A T E

UNITED STATES OF AMERICA

SOUTHERN DISTRICT OF FLORIDA

I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO HEREBY CERTIFY THAT THE FOREGOING 16 PAGES CONSTITUTE A TRUE TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.

IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 7TH DAY OF JUNE 2010.

/S/CARL SCHANZLEH
CARL SCHANZLEH, RPR-CM
OFFICIAL FEDERAL COURT REPORTER
299 EAST BROWARD BLVD., 202B
FORT LAUDERDALE, FL 33301
TELEPHONE 954/769-5488